

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

WINFRIED P. RUGGIA, et al., )
)
Plaintiffs, )
)
v. ) Civil Action No.: 1:09-cv-1067
)
WASHINGTON MUTUAL, a division of )
JPMORGAN CHASE BANK, N.A., et al., )
)
Defendants. )

## Memorandum Opinion

This matter comes before the Court on Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (Dkt. no. 19) filed on behalf of Defendants JPMorgan Chase Bank, N.A., as acquirer of certain assets and liabilities of Washington Mutual Bank from the Federal Deposit Insurance Corporation ("FDIC"), as Receiver for Washington Mutual Bank ("Chase"), JPMC Specialty Mortgage, LLC ("JPMC"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and Equity Trustees, LLC ("Equity") (collectively "Defendants"). For the reasons that follow, Defendants' Motion (Dkt. no. 19) is hereby GRANTED. This case is DISMISSED WITH PREJUDICE, as any further effort to amend would prove futile.

### I. Background

Plaintiffs filed their Amended Complaint on October 29, 2009, alleging claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§1692 *et seq.*, as well as claims seeking to invalidate a contract due to "illegal gambling," and claims for declaratory judgment, quiet title, and fraud. The pertinent factual allegations in this case, which the Court assumes to be true, are as follows.

1

On April 14, 2006, Plaintiffs executed a promissory note (the "Note") and deed of trust (the "Deed"), which placed a security interest on their home (the "Property") with Accredited Home Lenders, Inc. ("Accredited").[1] Amend. Compl. at ¶¶ 10-14. An allonge to the Note bears an endorsement which indicates a transfer of the Note from Accredited to Washington Mutual. The endorsement is signed by Mary K. Kochmer, who is listed as Assistant Secretary for Accredited. Washington Mutual's assets were in turn assumed by Chase.[2] A second allonge to the Note shows that Chase negotiated the Note to JPMC via an endorsement signed by Barbara Hindman, who is indicated as Vice President for Chase.

Plaintiffs began receiving demands for payment from Washington Mutual (now Chase) in 2009. Amend. Compl. at ¶¶ 18-19. Plaintiffs allege that the Loan was then securitized and put into of a "pool of securitized mortgage and asset backed securities." Amend. Compl. at ¶¶ 21-22. Plaintiffs were notified that they were in default, that their loan had been accelerated, and the date of the foreclosure sale. Amend. Compl. at ¶ 36. Defendant Equity scheduled a foreclosure sale of the Property on August 6, 2009. Amend. Compl. at ¶ 46. Equity was appointed as a "substitute trustee" and JPMC Specialty Mortgage, LLC acted as a "mortgage servicer." That foreclosure sale has yet to go forward and no further action has proceeded against the property since the inception of this suit.

---

[1] Plaintiffs explicitly reference and rely upon the Note and Deed at issue in this case, and do not plausibly dispute the authenticity of these documents. Thus, the Court may consider them at this stage in the case. *See American Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004).
[2] Washington Mutual's assets were placed into the receivership of the FDIC. The FDIC then sold those assets and certain liabilities to Chase. This information is publicly available. *See* http://www.fdic.gov/about/freedom/Washington_Mutual_P_and_A.pdf

## II. Standard of Review

Under FED. R. CIV. P. 12(b)(6) an adequate Complaint must contain "sufficient factual matter, accepted as true 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is "facially plausible" when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, because Count VI of the Amended Complaint alleges a claim for fraud, FED. R. CIV. P. 9(b) heightens the pleading standard applicable to that claim. *See Anderson v. Sara Lee Corp.*, 508 F.3d 181, 188 (4th Cir. 2007).

## III. Procedural Posture

Plaintiffs filed their original Complaint in the Circuit Court of Fairfax County, Virginia on or about August 6, 2009. On September 22, 2009, Defendants removed the action to this Court. Defendants filed their Motion to Dismiss Plaintiffs' original Complaint on September 29, 2009. On October 29, 2009, Plaintiffs filed their Amended Complaint, which Defendants subsequently moved to dismiss on November 11, 2009. The Court heard oral arguments on Defendants Motion to Dismiss on January 8, 2010 and requested supplemental briefing from the parties by Order dated March 26, 2010.

## IV. Analysis

Plaintiffs' allegations seek to challenge the authority of the various named Defendants to enforce the Deed securing the Note executed by Plaintiffs.[3]

---

[3] In the Amended Complaint and Brief in Opposition to Defendants' Motion to Dismiss, Plaintiffs' counsel repeatedly uses the term "standing" or "Article III standing" in alleging that the various Defendants are without authority to foreclose on the Plaintiffs' home or enforce the promissory note at issue. Counsel completely conflates and misunderstands the concept of "Article III standing," which refers to a plaintiff's ability to maintain a suit in federal court pursuant to the "case or controversy" requirement found in Article III of the United States Constitution. *See Lujan v. Defenders of Wildlife*, 112 S. Ct. 2130, 2136 (1992). The same can be said for counsel's insistent citation of FED. R. CIV. P. 17's "real party in interest" requirement

Plaintiffs allege that the entities seeking to foreclose on their home are not entitled as a matter of law to do so. Specifically, Plaintiffs allege that "given the splitting, selling, trading, and insuring of the pieces of the Note on the secondary market, the Deed of Trust is split from the Note and is unenforceable . . . " Amend. Compl. at ¶ 67. However, nothing in Plaintiffs' conclusory allegations provides a plausible basis for relief after considering the settled law of negotiable instruments or the enforcement of deeds of trust securing notes after their negotiation.

Under Virginia law, the holder of an instrument or a nonholder in possession of the instrument with the same rights as the holder may enforce the instrument. Va. Code. Ann. §8.3A-301. Indeed, an individual may be "entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument." *Id.* An individual becomes the "holder" of an instrument through the process of negotiation, and if "an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its endorsement by the holder." *Id.* at §8.3A-201(b). On the other hand, if an instrument has a blank endorsement, it is considered "payable to bearer," and may be negotiated by transfer of possession alone. *See* VA. Code §§ 8.3A-201(b) & & 8.3A-205.

As reflected in its March 26, 2010 Order, the Court was careful to consider the nature of the transfer of the Note from the initial lender to its current holder, as the initial copy of Note submitted with Plaintiffs' Motion to Dismiss established that Plaintiffs entered into a lending agreement with Accredited, but contained no further endorsements. Supplemental briefing from the parties revealed, however, that Defendants continue to

---

which, again, pertains to the ability of a *plaintiff* to bring a suit in federal court. *See* 6A FED. PRAC. & PROC. CIV. § 1543 (2d ed.)("By its very nature, Rule 17(a) applies only to those who are asserting a claim and thus is of most importance with regard to plaintiffs" and parties asserting cross-claims and counterclaims).

possess the Note, together with two allonges. The allonges reflect the entire transactional history of the Note, and indicate that the Note was properly negotiated to JPMC.[4] The Court deems the allonges part of the Note because in Virginia, "[f]or the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is part of the instrument." Va. Code § 8.3A-204. Thus, the documents referenced and relied upon in the Complaint demonstrate that the Note was executed by Plaintiffs and subsequently negotiated to JPMC, vesting JPMC with the rights and privileges of the holder of the Note.

Finally, absent a contrary provision, notes are generally freely transferable, and the transferee retains the right to enforce the instrument. Under Va. Code Ann. § 8.3A-203(b), the "[t]ransfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument. . ." *See also Johnson v. Ferris*, 58 Va. Cir. 7, 2001 WL 1829719, at *4 (May 31, 2001 Va. Cir. Ct.)(noting that "in the absence of an express provision against assignment of a contract not involving personal skill, trust, or confidence, the contract is freely assignable" and citing *J. Maury Dove Co. v. New River Coal*, 150 Va. 796 (Va. 1928)).

The explicit terms of the Note at issue here indicate that they are freely transferable. *See* Note at ¶ 1 ("I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the Note Holder"). As the Virginia Supreme Court noted long ago, the promise to pay a mortgage is a promise to pay a "negotiable note[] secured by

---

[4] The first allonge to the Note contains an endorsement from Accredited to Washington Mutual, *see* Plaintiff's Supplemental Ex. 1, demonstrating that it was negotiated by the original lender, Accredited, to Washington Mutual. The second allonge demonstrates that Chase negotiated the Note to JPMC via endorsement by Barbara Hindman, Vice President for Chase. *Id.*

[the mortgage] to the respective payees thereof, or to the person or persons to whom [it] might...be negotiated..." *Blanton v. Keneipp*, 155 Va. 668, 681 (Va.1931).

The parties agree that Plaintiffs have ceased making payments on the Note. In Virginia, the obligation to pay an instrument can only be "discharged as stated in [Title 8.3A] or by an act or agreement with the party which would discharge an obligation to pay money under a simple contract." Va. Code § 8.3A-601. Plaintiffs offer no allegation that they reached an agreement with a noteholder or took any other action which would suffice to discharge the obligation under the Virginia statute. Thus, "to permit the parties to the [instrument] to object to its payment, on any of the grounds stated, would greatly impair the negotiability of bills and notes; their most distinguishing, most useful, and most valued feature." *Whitworth v. Adams*, 1827 WL 1200 at *45 (Va. 1827).

Next, the so-called "split" of the Deed from the Note alleged by Plaintiffs does not render the Deed unenforceable nor does it leave the Note unsecured. Under Virginia law, when a note is assigned, the deed of trust securing that debt necessarily runs with it. *See Williams v. Gifford*, 139 Va. 779, 784 (1924); *see also Stimpson v. Bishop*, 82 Va. 190, 200-01 (1886)("It is undoubtedly true that a transfer of a secured debt carries with it the security without formal assignment or delivery."). Moreover, as the Virginia Supreme Court has recognized, when deeds of trust and their underlying notes are "separate and distinct" documents,

> ... in appropriate circumstances, we have recognized that 'notes and contemporaneous written agreements executed as part of the same transaction will be construed together as forming one contract.' So long as neither document varies or contradicts the terms of the other, terms of one document which clearly contemplate the application of terms in the other may be viewed together as representing the complete agreement of the parties.

*Virginia Housing Development Authority v. Fox Run Ltd. Partnership*, 255 Va. 356, 364-365 (Va. 1998). Thus, a deed of trust continues to secure the holder of a note and nothing in the negotiation or putative securitization of a note renders it unsecured.

In turn, pursuant to Va. Code § 55-59(9), "[t]he party secured by the deed of trust, or the holders of greater than fifty percent of the monetary obligations secured thereby" are empowered to appoint a substitute trustee, "regardless of whether such right and power is expressly granted in such deed of trust." *Id.* Central to Plaintiffs' argument is that Defendants are not the "party secured by the deed of trust" or "the holder of greater than fifty percent of the monetary obligations secured thereby," and thus were not empowered to name a substitute trustee. However, as discussed above, the Note is possessed by Chase, which is thus the "party secured by the deed of trust." Once appointed, the substitute trustee is empowered by Va. Code § 55-59(7) to foreclose and sell property provided as security for the Note.

Finally, Plaintiffs also appear to advance the argument that because "credit default swaps" had been purchased on Plaintiffs' loans, Plaintiffs are thereby discharged from their obligations under the promissory note due to some sort of impermissible "double recovery." However, as this District recently held in a nearly identical case, and this Court agrees, "[Plaintiff] provides no factual or legal basis, and the Court finds none, to support his contention that because [Plaintiff's] default triggered insurance for any losses caused by that default or 'credit enhancements,' he is discharged from the promissory notes and the Property is released from the deeds of trust." *Horvath v. Bank of New York*, 2010 WL 538039 at *2 (E.D.Va. January 29, 2010).

### a. Count I Fair Debt Collection Practices Act ("FDPCA")

Count I of the Amended Complaint alleges violations of the FDCPA against Defendant Washington Mutual. In order to establish a FDCPA violation, Plaintiffs must prove that: (1) the plaintiff has been the object of collection activity arising from consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA. *See Dikun v. Streich*, 369 F. Supp. 2d 781, 784-85 (E.D. Va. 2005). The FDCPA defines a debt collector as "any person who uses an instrumentality of interstate commerce or the mails in any business *the principal purpose of which is the collection of any debts*, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C.A. § 1692a(6)(emphasis added).

This District recently emphasized that "[m]ortgage servicing companies and trustees exercising their fiduciary duties enjoy broad statutory exemptions from liability under the FDCPA." *Horvath*, 2010 WL 538039 (E.D. Va. Jan. 29, 2010)(citing 15 U.S.C. §1692a(6)(F)(i) ("The term [debt collector] does not include any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement") and 5 U.S.C. §1692a(6)(F)(iii) ("The term [debt collector] does not include... any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... concerns a debt which was not in default at the time it was obtained by such person.")).

The Amended Complaint does allege, albeit generically, that Washington Mutual acted without "authority to enforce the obligation, or in the alternative, the obligation has

been extinguished, satisfied, or has been split from the Deed of Trust resulting in an unsecured Note." Amend. Compl. at ¶56. However, these are precisely the type of "threadbare" and unsupportable assertions *Twombly* and *Iqbal* are meant to root out.

Further, as this District has also previously recognized, "[i]t is well-settled that provisions of the FDCPA generally apply only to debt collectors...[a]nd, creditors are not liable under the FDCPA." *Scott v. Wells Fargo Home Mortg. Inc.*, 326 F.Supp.2d 709, 717 (E.D.Va. 2003). More specifically, "creditors, mortgagors, and mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA" *Id.*; *see also Warren v. Countrywide Home Loans, Inc.*, 2009 U.S. App. LEXIS 18191 (11th Cir. Aug. 14, 2009) ("several courts have held that an enforcer of a security interest, such as a mortgage company foreclosing on mortgages of real property falls outside the ambit of the FDCPA...").

More importantly, even if the FDCPA did apply, Plaintiffs' FDCPA claim, like Plaintiffs' other claims, is based on the specious premise that the named Defendants somehow have no right, title, or interest in the Deed or the Note. As the foregoing makes clear, Plaintiffs offer no plausible basis on which the Court can agree with this premise.

### b. Count II – Declaratory Judgment

Count II of the Amended Complaint seeks a declaratory judgment from the Court declaring that none of the Defendants have any proper legal or equitable interest in the Property. Amend. Compl. at ¶63. As Defendants note, this theory certainly seems inconsistent with Virginia's status as a non-judicial foreclosure state. *See* Va. Code §§ 55-59.1-59.4.

Given the Court's foregoing discussion of the transferability of promissory notes and the deeds that secure them, the Court simply has no basis to award the declaratory relief sought by Plaintiffs in this action.

### c. Count III – Quiet Title

In Count III, Plaintiffs assert a claim to quiet title to the property in dispute. Plaintiffs simply assert the legal conclusion that Plaintiffs are "the only party to this matter than can prove legal and equitable ownership interest in the Property." Amend. Compl. at ¶ 65. "An action to quiet title is based on the premise that a person with good title to certain real or personal property should not be subjected to various future claims against that title." *Maine v. Adams*, 277 Va. 230, 238 (2009). This claim resembles Count II, and essentially seeks a declaration that none of the Defendants hold any claim to or interest in the property, but does so in a wholly conclusory fashion, without any plausible factual pleadings in support.

Again, given the Court's foregoing discussion of the transferability of promissory notes and the deeds that secure them, the Court has no basis to award the relief sought by Plaintiffs in Count III of their Amended Complaint.

### d. Counts IV and V – "Declaratory Actions" Premised on Illegal Gambling

In Counts IV and V of their Amended Complaint, Plaintiffs added claims for declaratory judgment, asking the Court to declare the loan agreement void, presumably due to illegality of purpose based on "illegal gambling." The Virginia Code defines "illegal gambling" as:

> the making, placing or receipt, of any bet or wager in this Commonwealth of money or other thing of value, made in exchange for a chance to win a prize, stake or other consideration or thing of value,

dependent upon the result of any game, contest or any other event the outcome of which is uncertain or a matter of chance, whether such game, contest or event, occurs or is to occur inside or outside the limits of this Commonwealth.

Va. Code § 18.2-325(1). Plaintiffs argue that once the mortgage Note was securitized, Defendants "sold, shopped, and solicited others to purchase or obtain credit default swaps against the Plaintiff's Note." Amend. Compl. at ¶ 83. Plaintiffs allege this constituted participating in gambling activity in violation of Virginia law. Va. Code § 18.2-325(1). The "event" on which the Defendants purportedly "gambled" is Plaintiffs' default on the Note.

Of course, like Plaintiffs' other claims, Counts IV and V fail for numerous reasons. First, and foremost, Plaintiffs have provided no authority, and the Court finds none, which supports the proposition that the practice of purchasing credit default swaps somehow constitutes "illegal gambling" under the Virginia statute. Moreover, the contract at issue here is not a contract to engage in "illegal gambling," or any other illegal act for that matter. Generally, "a contract to perform an act prohibited by a statute is void and. . . an action will not lie to enforce the contract." *P.M. Palumbo, Jr., M.D., Inc. v. Bennett*, 242 Va. 248, 251 (Va. 1991). Here, Plaintiffs do not (and cannot) allege that the Plaintiffs' mortgage agreement was a "contract to perform an act prohibited by a statute." The acts contemplated in the mortgage agreement were simply lending money on one hand, and, on the other, to repay that money with interest and provide the property as collateral. What the lender subsequently does with the mortgage note does not alter the nature of the initial agreement, and certainly does not render its purpose illegal.

Further, to the extent that Plaintiffs attempt to bring a cause of action strictly for "illegal gambling," the Court is unaware of any such private cause of action under

Virginia law. Pursuant to Va. Code § 18.2-339, it is the province of Commonwealth Attorneys or the Attorney General to seek enjoinment of gambling activities. Finally, even if the foregoing were disregarded, Plaintiffs fail to plead any plausible factual allegations which meet the statutory definition of "Illegal Gambling." Va. Code § 18.2-325(1). Moreover, since there is no specific statute of limitations for such claims, they fall under Virginia's two-year catchall statute of limitations provided in Va. Code § 8.01-248.

For these reasons, Counts IV and V must be dismissed.

### e. Count VI – Fraud

Count VI of the Complaint alleges fraud. Namely, Plaintiffs allege Defendants fraudulently appointed a substitute trustee "without establishing their standing" to foreclose on the Property and "fraudulently set themselves up as having the right to commence or effectuate foreclosures" in Virginia. Amend. Compl. at ¶¶ 98, 99.

Under Virginia law, a claim for fraud requires: (1) a false representation; (2) of a material fact; (3) intentionally or knowingly made; (4) with the intent to mislead another person; (5) which that person relied upon; (6) with resulting damage to that person. *See Davis v. Marshall Homes*, 265 Va. 159 (2003). Though there are a number of valid grounds on which this claim might be dismissed, the simplest is that even if any of Defendants' actions constituted a "misrepresentation," Plaintiffs fail to allege that such misrepresentation was made *to Plaintiffs*, or that *Plaintiffs* reasonably or detrimentally relied upon the alleged misrepresentation. Rather, Plaintiffs allege some indefinite sort of fraud upon the "Judicial system [sic] and the Courts of the Commonwealth of Virginia,"

which, even if such a claim constituted a cognizable cause of action, does not survive the heightened pleading requirements of Rule 9.

## V. Conclusion

Plaintiffs' Amended Complaint fails to state a plausible basis on which relief may be granted. As such, all counts must be dismissed as to Defendants JPMorgan Chase Bank, N.A., as acquirer of certain assets and liabilities of Washington Mutual Bank from the Federal Deposit Insurance Corporation, as Receiver for Washington Mutual Bank, JPMC Specialty Mortgage, LLC, Mortgage Electronic Registration Systems, Inc., and Equity Trustees, LLC. As any further effort to amend would prove futile, this case is DISMISSED WITH PREJUDICE.

An appropriate order shall issue.

Alexandria, Virginia
May 13, 2010

/s/
Liam O'Grady
United States District Judge